**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BETTY JO GREWEN,**

                          **Plaintiff,**

                **v.**                                                             **1:11-CV-829
                                                                                      (FJS)**

**CAROLYN W. COLVIN, Acting Commissioner
of Social Security,**

                          **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **LEGAL AID SOCIETY OF NORTHEASTERN NEW YORK**<br>112 Spring Street, Suite 109<br>Saratoga Springs, New York 12866<br>Attorneys for Plaintiff | **MARY MARTHA WITHINGTON, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF REGIONAL GENERAL<br>COUNSEL - REGION II**<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **ANDREEA L. LECHLEITNER, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court are the parties' cross-motions for judgment on the pleadings.

*See* Dkt. Nos. 12-13.

## II. BACKGROUND

Plaintiff filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act and was given a protective filing date of October 17, 2007. *See* Dkt. No. 9, Administrative Record ("AR") at 14, 52, 127-33, 141, 184, 218. Plaintiff also filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act and was given a protective filing date of November 13, 2007. *See id.* at 14, 53, 124-26. The Social Security Administration denied these applications by Notice of Disapproved Claim dated February 27, 2008. *See id.* at 55-60. On March 17, 2008, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") to challenge the denial. *See id.* at 61.

On March 17, 2010, Plaintiff had a hearing before ALJ Robert Ringler in Albany, New York. *See id.* at 14, 23, 25, 112-23. By decision dated March 26, 2010, the ALJ denied Plaintiff's applications for a period of disability, disability insurance benefits, and Supplemental Security Income benefits. *See id.* at 11-22. In reaching his decision, the ALJ made the following findings:

> 1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. Plaintiff had engaged in substantial gainful activity at certain times since May 27, 2007, the alleged onset date.
>
> 3. Plaintiff had the following severe impairments: vertigo, obesity, headaches, and diplopia.
>
> 4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. Plaintiff had the residual functional capacity ("RFC") to perform

> medium work as defined by 20 C.F.R. §§ 404.1567(c), 416.967(c), but, due to infrequent episodes of dizziness, she would be unable to drive or work around heights or heavy machinery. In addition, she could not perform employment activities requiring strong visual acuity.
>
> 6. Plaintiff was capable of performing past relevant work as a retail sales/clerk because this work did not require the performance of work-related activities precluded by her RFC.

Based on these findings, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 27, 2007, through the date of the ALJ's decision, March 26, 2010.

By letter dated May 18, 2010, Plaintiff made a timely request, by certified mail, to the Appeals Council of the Social Security Administration to review the ALJ's decision. *See* AR at 8-10. By Notice of Appeals Council Action dated May 12, 2011, which Plaintiff's counsel received on May 19, 2011, the Appeals Council denied Plaintiff's request for review. *See id.* at 1-5. In support of her appeal, Plaintiff submitted additional treatment records that she obtained from Neurological and Stroke Care covering office visits between December 2, 2009, and April 2, 2010. *See id.* at 2, 450-73. The Appeals Council considered relevant evidence through the date of the ALJ hearing, March 26, 2010. *See id.* at 2. However, information after the ALJ's decision did not affect the Appeals Council's decision regarding whether Plaintiff was disabled beginning on or before March 26, 2010. *See id.*

Having exhausted her administrative remedies, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), seeking review of Defendant's final decision. In support of her motion for judgment on the pleadings, Plaintiff argued that the ALJ erred in assessing her credibility and in finding that she could return to her past relevant work as a retail/sales clerk.

### III. DISCUSSION

**A. Standard of review**

*1. Correct legal principles and substantial evidence*

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). In reviewing an ALJ's decision, the court employs a two-prong test. First, the court must decide if the ALJ applied the correct legal principles. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation and other citation omitted).

The court must determine whether the ALJ applied the correct legal standards because

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Accordingly, the court will not uphold an ALJ's decision if it is based on an erroneous view of the law. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983).

If the court determines that the ALJ applied the correct legal principles, the court must then decide whether "substantial evidence" supports the ALJ's findings. *See Johnson*, 817 F.2d at 985 (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" is evidence that amounts to "'more than a mere scintilla,'" defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*,

402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where evidence is deemed susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (citations omitted). If there is substantial evidence to support the ALJ's findings, the court must sustain those findings "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted); *see also Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) (citations omitted). In other words, the court must afford the ALJ's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

### *2. Five-step determination of disability*

To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). In addition, a claimant's

> [p]hysical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

>                in the national economy, regardless of whether such work exists in
>                the immediate area in which he lives or whether a specific job
>                vacancy exists for him, or whether he would be hired if he applied
>                for work. . . .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating disability claims, the ALJ follows a five-step sequential evaluation process:

> First, the [ALJ] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [ALJ] next
> considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant
> has an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [ALJ] will consider
> him disabled without considering vocational factors such as age,
> education, and work experience[.] . . . Assuming the claimant does
> not have a listed impairment, the fourth inquiry is whether despite
> the claimant's severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the claimant is
> unable to perform his past work, the [ALJ] then determines
> whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

"[T]he claimant bears the burden of proving disability at the first four steps." *Berry*, 675 F.2d at 467. If the claimant meets her burden, then the Commissioner has the burden of proof at the fifth step. *See id.*

**B.     Whether the ALJ erred in assessing Plaintiff's credibility**

It is the function of the ALJ, and not the court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. at 399, 91 S. Ct. at 1426) (other citations omitted). Although the ALJ need not resolve every conflict in

the record, "'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983))) (other citations omitted).

In determining the credibility of the claimant's statements, the ALJ must consider the entire record, including the objective medical evidence, the claimant's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the claimant, and any other relevant evidence in the record. *See* SSR 96-7p, 1996 WL 374186, *1 (July 2, 1996). However, it is not "require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*) (citation omitted); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting argument that the ALJ must explicitly reconcile every shred of conflicting testimony); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (stating that "'an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000))).

"The claimant's subjective complaints are an important element of the RFC calculus[.]" *Cornell v. Astrue*, 764 F. Supp. 2d 381, 399 (N.D.N.Y. 2010) (citing *Lewis v. Apfel*, 62 F. Supp. 648, 657-58 (N.D.N.Y. 1999)); *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984) (citation

omitted). However, "[s]ubjective symptomatology by itself cannot be the basis for a finding of disability." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 68 (N.D.N.Y. 2012). A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged. *See* 42 U.S.C. §§ 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Gernavage v. Shalala*, 882 F. Supp. 1413, 1420 n.7 (S.D.N.Y. 1995).

Although an ALJ "is required to take the claimant's reports of pain and other limitations into account," he is "not required to accept the claimant's subjective complaints without question[.]" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)); *Mimms*, 750 F.2d at 186 (quotation omitted). If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether there is substantial evidence to support his determination. *See Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984); *Valente*, 733 F.2d at 1045 (citations omitted). The ALJ may also find a claimant's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree. *See* SSR 96-7p, 1996 WL 374186, at *1.

One strong indicator of the claimant's credibility is its consistency, both internally and with other information in the record. *See id.* The ALJ must consider such factors as the degree to which the claimant's statements are consistent with the objective medical evidence, the

-8-

consistency of the claimant's own statements, and the consistency of the claimant's statements with other information in the record. *See id.* However, lack of consistency between a claimant's statements and other statements that she has made at other times does not necessarily mean that the claimant's statements are not credible. *See id.*

Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the claimant does not always assert the same intensity, persistence, or functional effects of his symptoms. *See id.* Therefore, the ALJ must review the record to determine if there are any explanations for any variations in the claimant's statements about her symptoms and their effects. *See id.*

The regulations establish a two-step procedure for evaluating a claimant's contentions of disability symptoms. *See* 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment [] that could reasonably be expected to produce" the level of pain or symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *1. Second, the ALJ must evaluate the intensity and persistence of the symptoms experienced, considering all of the available evidence and, in the event that the claimant's testimony about her pain is not substantiated by objective medical evidence, must engage in a credibility analysis. *See* 20 C.F.R. § 404.1529(c)(3); *Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010). In making that assessment, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) other treatment that the claimant receives or has received for relief of her pain or other symptoms; (6)

other measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions resulting from her pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Meadors*, 370 F. App'x at 186 n.1.

In this case, Plaintiff contends that the ALJ committed reversible legal error by failing to apply the two-prong test outlined in SSR 96-7p, by failing to gather and consider highly probative evidence, and by improperly assessing Plaintiff's credibility. *See* Plaintiff's Brief at 14, 19, 25. In his decision, the ALJ explicitly noted that he was required to follow the two-step process outlined in SSR 96-7p. *See* AR at 70. Furthermore, contrary to Plaintiff's assertion, the ALJ undertook the appropriate two-prong analysis. In his decision, the ALJ relied on the objective medical evidence and Plaintiff's testimony about her headaches, dizziness, double vision, and fainting spells. *See id.* at 17-21, 31-44. When the ALJ reviewed Plaintiff's subjective complaints and her history of treatment, he noted that the totality of the medical evidence did not corroborate her complaints of limitation. *See id.* at 18-19. The ALJ also concluded that Plaintiff's wide range of activities described in her activities of daily living report undercut her credibility. *See id.* at 21. Furthermore, at the hearing, Plaintiff testified that she used a computer to socialize on Facebook, spent time with her daughters, and did household chores. *See id.* at 40, 43.

Drawing on the extensive medical record and Plaintiff's testimony, the ALJ considered a battery of diagnostic tests that returned normal results in assessing the location, duration, and intensity of Plaintiff's symptoms. *See id.* at 17-19. The ALJ also gave substantial weight to the opinion evidence of Drs. Puri and Parmar. *See id.* at 21. Although Dr. Puri was a medical consultant, his opinion can constitute substantial evidence. *See Mongeur*, 722 F.3d at 1039.

Plaintiff also testified about the alleged onset date of her symptoms, the eleven-month remission period following her gastric bypass surgery, and the alleged recurrence of her symptoms. *See* AR at 31-34.

The ALJ also considered the medications, treatments, and other measures Plaintiff used to alleviate her symptoms. The ALJ noted that Dr. Kaplan prescribed Darvocet. *See id.* at 17. At the administrative hearing, Plaintiff testified that she had been prescribed Topomax and Toprol to no effect. *See id.* at 42. Moreover, the ALJ noted that Plaintiff had undergone gastric bypass surgery in May 2008 and a steroid block of the right zygomaticotemporal nerve on October 1 and October 22, 2009. *See id.* at 17, 19, 39. Plaintiff also testified that her double vision was under control due to her prescription glasses, which were outfitted with prisms. *See id.* at 36-38.

Assessing all this evidence, the ALJ evaluated Plaintiff's credibility and concluded she was less than credible due to improbabilities and inconsistencies in her testimony at the administrative hearing. *See id.* at 21. In his decision, the ALJ was explicit and specific in identifying his rationale regarding his credibility assessment. *See id.* At the hearing, Plaintiff testified that she had fainted one to three times a day for approximately the last year, with each episode of unconsciousness lasting fifteen to twenty minutes. *See id.* at 20, 34. Plaintiff further testified that she only fainted at home and never injured herself. *See id.* at 20-21, 35. The ALJ noted that this statement was directly in tension with Plaintiff's statement to Dr. Parmar that she fainted one to three times monthly. *See id.* at 21. Although Plaintiff claims that her symptoms exacerbated in the period leading up to the administrative hearing, *see* Plaintiff's Brief at 22-23, there is still temporal overlap in Plaintiff's inconsistent statements. However, despite finding

Plaintiff not fully credible, the ALJ did take into consideration Plaintiff's complaints about headaches, dizziness, and diplopia. *See id.* at 15. The ALJ also limited Plaintiff to work that did not entail driving, working around heights or heavy machinery and activities involving strong visual acuity. *See id.*

Finally, Plaintiff contends that, due to her good work history, she is entitled to substantial credibility. *See id.* at 21. To be sure, "a good work history may be deemed probative of credibility[.]" *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *see also Rivera*, 717 F.2d at 725 (noting that evidence of a good work record is evidence of credibility (citation omitted)). Work history, however, is "just one of many factors" that an ALJ considers in assessing credibility. *Schaal*, 134 F.3d at 502.

Reviewing the record as a whole, it is clear that there is substantial evidence in the record to support the ALJ's assessment of Plaintiff's credibility.

## C. Whether the ALJ erred in finding that Plaintiff could return to her past relevant work as a retail/sales clerk

If a claimant's impairment or combination of impairments fails to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, *see* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(c), 416.925, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). Individuals retain the capacity to perform their past relevant work when they can perform the functional demands and duties of the job as they actually performed it or as generally performed throughout the national economy. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (stating that "[t]he inquiry in Social Security benefit

cases is not whether the claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work" (citation omitted))*; Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003); *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. §§ 404.1566(a), 416.966(a). Even if a claimant cannot work the equivalent of eight hours a day for five days a week, "[p]art-time work that was of substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work . . . ." SSR 96-8p, 1996 WL 374184, *8 n.2 (July 2, 1996). The claimant has the burden to show that she cannot perform past relevant work. *See Ferraris*, 728 F.2d at 584.

Prior to step four, an ALJ must assess a claimant's RFC. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). An individual's RFC is defined as what an individual can still do despite her limitations after taking into account all of her medically determinable impairments that limit her ability to perform work-related tasks. *See* 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptoms, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing [20 C.F.R.] §§ 404.1545, 416.945). The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the claimant's subjective evidence of symptoms. *See* 20 C.F.R. § 404.1545(b); 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 200.00(e). "'It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency

medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability.'" *Williams v. Astrue*, No. 3:06-CV-1355, 2011 WL 831426, *11 (N.D.N.Y. Mar. 3, 2011) (quoting *Dunn v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 136484 (N.D.N.Y. November 18, 2010)) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c) and 416.927(f)(2)). If an ALJ relies on a non-examining reviewer's opinion, that opinion must be supported by the other evidence in the record. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996); *Rocchio v. Astrue*, No. 08 Civ. 3796, 2010 WL 5563842, *14 (S.D.N.Y. Nov. 10, 2010).

In this case, the ALJ concluded that Plaintiff had the RFC to perform medium work, *see* AR at 18, defined as "involvi[ing] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). In considering the evidence in the light most favorable to Plaintiff, the ALJ found Plaintiff's obesity and other issues prevented her from performing work activities above the medium exertional level. *See* AR at 18 n.2. The ALJ further limited Plaintiff's RFC; due to infrequent episodes of dizziness, she would be unable to drive, work around heights or heavy machinery, or perform employment activities requiring strong visual acuity. *See id.* at 18. After reviewing the medical evidence, the expert opinion evidence, and Plaintiff's testimony, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a retail/sales clerk as actually and generally performed. *See id.* at 21.

Plaintiff contends that a position as a retail/sales clerk would expose her to bright lights and loud noises that are triggers for her symptoms. *See* Plaintiff's Brief at 23-24. Therefore, she argues that resuming work as a retail/sales clerk would be far from the comfort that is required to

alleviate her symptoms. *See id.* at 24. To support her position, Plaintiff points to a note that her primary provider, Dr. Hickey, wrote in which she concluded that Plaintiff must be out of work indefinitely for evaluation of headaches. *See id.* at 22; AR at 395. However, a physician's statement that an individual is or is not disabled or that she can or cannot work is a statement on an issue reserved for the ALJ. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Snell*, 177 F.3d at 133 (quotation omitted). Moreover, the opinion of a treating physician as to the nature and severity of an impairment is entitled to controlling weight only if it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996). This note merely stated that Plaintiff should be out of work while she underwent examination for headaches, not that Plaintiff had functional limitations that precluded all work. Moreover, Dr. Hickey's note was neither supported by treatment notes nor clinical findings, nor consistent with the administrative record, including the examination findings of other physicians and diagnostic tests. Therefore, the ALJ did not err in not affording Dr. Hickey's opinion controlling weight.

Plaintiff also testified that her position at Walmart entailed standing rather than sitting and lifting a maximum of thirty pounds. *See* AR at 29. Moreover, Plaintiff did not mention that the job entailed using machinery, working around heights, or requiring significant visual acuity. Furthermore, the Department of Labor describes a salesperson of cosmetics and toiletries as being quiet, light work that neither involves moving machinery or heights. In light of Plaintiff's medical record, medical opinion evidence, and Plaintiff's testimony, the Court finds that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff was capable of

performing her past relevant work as a retail/sales clerk.  Furthermore, the Court concludes that, based on the entire record, the ALJ properly assessed Plaintiff's RFC.

## IV. CONCLUSION

After reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**, and Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 27, 2014
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior U.S. District Judge